**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-96-DLB-CJS**

**KAMRON KARINGTON** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**MATT PLAPP, et al.,** **DEFENDANTS**

* * * * * * * * * *

This matter is before the Court on Defendants Matt Plapp and Driven Media Solutions, LLC's Motion to Abstain, then Stay. (Doc. # 10). Plaintiff Kamron Karington filed a Response in Opposition (Doc. # 19), Defendants filed a Reply (Doc. # 20-1), and this matter is ripe for the Court's review. For the following reasons, Defendants' Motion is **denied**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case flows from a business transaction in which Defendant Driven Media Solutions, LLC ("DMS") purchased Loyalty Lock, LLC d/b/a Repeat Returns—a restaurant marketing software business—from Plaintiff. (Doc. # 1 ¶¶ 29-59).

Rather than pay for Repeat Returns outright, the Parties structured the transaction so that Defendants would acquire Repeat Returns subject to secured promissory Notes. (Doc. # 10-1 ¶ 13). In November of 2023, to facilitate this transaction, the Parties drafted a series of contracts (the "Transaction Documents"). Relevant to Defendants' Motion, these include: (1) a Membership Interest Purchase Agreement ("MIPA"), (2) an Employment Agreement between DMS and Plaintiff (the "Employment Agreement"), (3)

DMS's Amended Operating Agreement (the "Amended Operating Agreement"), and (4) a Note between Plaintiff and DMS (the "Note").[1] (Doc. # 10-1 ¶ 12).

Importantly, each of these Transaction Documents contains a choice-of-law and forum-selection provision. The MIPA provides that:

> This Agreement shall be governed by the laws of the State of Nevada. Any litigation involving an alleged breach of this Agreement, or seeking indemnification hereunder, shall be filed in the State of Nevada, Clark County courts or if applicable the Courts of the Eighth Judicial District of Nevada. Any alternative dispute resolution utilized shall take place in Las Vegas, Nevada.

(Doc. # 1-1 at 28). Additionally, the Note states that:

> This Note and the rights and obligations of the parties hereunder shall in all respects be governed by and construed and enforced in accordance with the laws of the State of Nevada, regardless of its principles of conflicts of laws, as to which issues the law of the applicable forum shall govern. Any claim brought in a court to enforce any provision of this Note shall be brought in the courts of the County of Clark, State of Nevada.

(Doc. # 19-1 at 6). And the Amended Operating Agreement states:

> This Agreement and the rights of the parties hereunder will be governed by, interpreted, and enforced in accordance with the laws of the Commonwealth of Kentucky. Any proceeding brought with regard to this agreement or to the Company through this agreement shall be brought in the Courts of the County of Kenton, Commonwealth of Kentucky or if in federal court, in the Eastern District of Kentucky, Covington Division.

(Doc. # 19-3 at 24). Finally, the Employment Agreement provides that:

> Any action to enforce any of the provisions of this Agreement, shall be brought exclusively in a court of the Commonwealth of Kentucky or in a Federal court located within the Commonwealth of Kentucky, and by execution and delivery of this Agreement, Employee and Employer irrevocably consent to the exclusive jurisdiction of those courts and Employee hereby submits to personal jurisdiction in the Commonwealth of Kentucky. Employee and Employer irrevocably waive any objection, including any objection based on lack of jurisdiction, improper venue or forum non conveniens, which either may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect to this

[1] The Transaction Documents also include an additional promissory note and employment agreement not relevant to the instant Motion.

> Agreement or any transaction related hereto. Employee and Employer acknowledge and agree that any service of legal process by mail in the manner provided for notices under this Agreement constitutes proper legal service of process under applicable law in any action or proceeding under or in respect to this Agreement.

(Doc. # 1-2 at 3-4).

On September 22, 2025, Plaintiff, along with two co-plaintiffs not party to this action, filed a lawsuit in the Eighth Judicial District Court for Clark County, Nevada (the "Nevada Action"). (Doc. # 10 at 4; Doc. # 10-1; *see also Kamron Karington, et al. v. Matt Plapp, et al.*, No. A-25-928774-B (8th Jud. Dist. Ct. Nev. filed Sept. 22, 2025)). The Nevada Action plaintiffs allege that, in an effort to induce them to sell their interest in Repeat Returns, Defendants "furnished cash-flow projections, offered assurances of management competence and anticipated revenue growth, and represented that Defendants would meet all contractual obligations in the Transaction Documents." (Doc. # 10-1 ¶ 29). And the Nevada Action plaintiffs assert that Defendants knew these representations were false at the time they were made. (*Id.* ¶ 30). Additionally, the Nevada Action plaintiffs argue that Defendants proceeded to breach material terms of the Transaction Documents by, among other things, falling behind on payments under the Note, failing to allow inspection of DMS's books and records as required under the MIPA, and failing to provide Plaintiff compensation for work performed under the Employment Agreement. (*Id.* ¶¶ 33-39, 49-72).

Defendants filed an answer in the Nevada Action. (Doc. # 10-2). In their answer, Defendants raise several affirmative defenses, arguing that they did not breach the Transaction Documents, or make any false or misleading statements to the Nevada Action plaintiffs. (*Id.* at 8-9). Further, Defendants brought a counterclaim, alleging that the Nevada Action plaintiffs made "material misrepresentations and omissions regarding

the functionality, readiness, and commercial viability of the software platform that induced Defendants to enter into the MIPA and related Transaction Documents." (Doc. # 10 at 5). As a remedy, Defendants seek rescission of the Transaction Documents, damages for fraudulent inducement, fraudulent concealment, and breach of the implied covenant of good faith and fair dealing. (Doc. # 10-2 ¶¶ 84-111). The Nevada Action has proceeded beyond the pleading stage—the parties have briefed substantive motions, including a partial motion for summary judgment, and proceeded through early case management conferences. *See* Docket, *Kamron Karington, et al. v. Matt Plapp, et al.*, No. A-25-928774-B (8th Jud. Dist. Ct. Nev. filed Sept. 22, 2025) https://www.clarkcountycourts.us/Portal/Home/WorkspaceMode?p=0 (last visited September 2, 2026).

On February 27, 2026, roughly five months after initiating the Nevada Action, Plaintiff filed the instant Complaint. (Doc. # 1). Therein Plaintiff alleges that Defendants failed to pay compensation owed under the Employment Agreement, failed to provide access to DMS's books and records under the Amended Operating Agreement, and engaged in misconduct related to DMS's management and finances following the closing. (Doc. # 1 ¶¶ 39-56, 86-90).

On April 7, 2026, Defendants filed the pending Motion to Abstain, then Stay this action. (Doc. # 10). Pursuant to the Parties' Proposed Agreed Order (Doc. # 15), the Court extended Plaintiff's deadline to respond to the Motion to May 8, 2026. (Doc. # 18). During this period, Plaintiff—along with the other Nevada Action plaintiffs—moved for leave to amend the complaint in the Nevada Action. (Doc. # 19 at 5). Specifically, the Nevada Action plaintiffs sought to remove their claim under the Employment Agreement,

which includes a Kentucky forum selection clause. (*Id.* at 5-6). The Nevada court granted the motion on May 1, 2026. (*See* Doc. # 19-5). Plaintiff subsequently filed his Response in Opposition to the instant Motion on May 8, 2026. (Doc. # 19). In his Response, Plaintiff argues that, because the Nevada Action no longer involves a claim under the Employment Agreement, the two actions do not involve the same issues or claims. (*Id.* at 6). Further, Plaintiff notes that the Nevada court cannot adjudicate claims under the Amended Operating Agreement or the Employment Agreement because those contracts contain forum selection clauses. (*Id.*). Defendants filed a Reply on May 21, 2026, and this matter is ripe for the Court's review. (Doc. # 20).

## II. ANALYSIS

Defendants argue that the Court should abstain from exercising its jurisdiction and stay this matter. (Doc. # 10 at 18). Specifically, Defendants assert that Plaintiff's claims in this Court are "premised entirely on the continued existence and enforceability" of the Transaction Documents. (*Id.* at 7). And, due to Defendants' counterclaim in the Nevada Action, the Nevada court must "address[] whether those agreements are valid[.]" (Doc. # 20-1 at 3). Thus, Defendants conclude that proceeding with this action "would require this Court to adjudicate issues that are already before a court with broader, first-filed jurisdiction over the entire transaction and all related parties, creating a substantial risk of duplicative proceedings and inconsistent rulings." (Doc. # 10 at 7).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). The doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Cnty. of Allegheny v. Frank*

*Mashuda Co.*, 360 U.S. 185, 188 (1959). Still, "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). So, despite the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given to them," abstention may be appropriate in rare circumstances. *Colorado River*, 424 U.S. at 817.

*Colorado River* abstention entails a two-step inquiry. First, the Court must "determine that the concurrent state and federal actions are actually parallel." *Romine*, 160 F.3d at 339 (citing *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28 (6th Cir. 1984)). Second, if the Court concludes that the actions are parallel, the Court must assess eight factors to determine whether issues of federalism or comity warrant abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-26 (1983); *Colorado River*, 424 U.S. at 818-19. When a district court considers these factors, however, the "balance [must be] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16.

**A. Parallel Actions**

The threshold question in the *Colorado River* abstention analysis is whether there are parallel proceedings in state court. *Crawley,* 744 F.2d at 31. To be considered "parallel" for abstention purposes, the proceedings must be "substantially similar." *Romine*, 160 F.3d at 337 (citations omitted). However, substantial similarity does not require that the parties or the claims are identical. *See Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990). When discerning parallelism, "courts may consider, *inter alia*, the causes of action, the relief sought, and the material facts of each case." *Kantner*

*Ingredients, Inc. v. All American Dairy Prods., Inc.*, 535 F. Supp. 2d 880, 885 (N.D. Ohio 2008) (citing *Romine*, 160 F.3d at 339-40). Importantly, courts must evaluate the state and federal actions as they currently exist and may not consider whether the proceedings could be modified to achieve parallelism. *See Crawley*, 744 F.2d at 31 ("The issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceeding.") (emphasis in original). A district court should only decide to stay an action under *Colorado River* if it "concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay[.]" *Id.* (citations omitted).

Here, Plaintiff argues that the Nevada Action is not a parallel state-court proceeding. (Doc. # 19 at 8). He notes that, while "this case may arise from the same broader factual backdrop" as the Nevada Action, "the claims are not the same, because each [Transaction Document] imposes distinct obligations, provides for different relief, and requires a different factual showing to establish breach." (*Id.*). Although Plaintiff acknowledges that both actions share a common factual nucleus, he maintains that resolution of the Nevada Action will rest on different facts than those required to adjudicate his claims under the Employment Agreement and Amended Operating Agreement here. (*Id.* at 9). And because he does not bring claims for breach of the Employment Agreement or the Amended Operating Agreement in the Nevada Action, Plaintiff concludes that it "is not an adequate vehicle for the complete resolution of the claims before this Court, the threshold requirement of parallelism is not met, and Defendant's Motion should be denied." (*Id.*). Of particular importance, Plaintiff continues,

is the fact that the Transaction Documents contain separate and varying choice-of-law and forum selection provisions—evidencing the parties' intent to "allow those separate contractual rights, obligations and remedies to be litigated in different forums[.]"[2] (*Id.*).

Defendants, on the other hand, argue that the two actions are parallel. This is true, Defendants continue, even after the amendment of the Nevada Action to purge claims for breach of the Employment Agreement. (Doc. # 20-1 at 3). That's because "[t]he Federal Action seeks to enforce rights under [the Transaction Documents], while the [Nevada Action] challenges those same agreements as invalid due to fraud." (*Id.* at 5). Defendants continue that "[b]ecause the Nevada court is adjudicating the validity of the Transaction Documents themselves, its resolution of that issue will necessarily determine or, at a minimum, materially affect—and potentially recast—the claims asserted here." (*Id.*). This, Defendants conclude, is "precisely the type of substantial similarity" that renders two actions parallel. (*Id.*).

The Court finds that the Nevada Action is not a parallel proceeding. In the Nevada Action, Kamron Karington, Joseph Gratz, and Empower Marketing Software, LLC bring claims against Matt Plapp and Driven Media Solutions, LLC. (*See* Doc. # 19-4). "Generally, parallel proceedings involve the *same* plaintiff against the *same* defendant, although the presence of additional parties in one suit but not the other will not necessarily destroy parallelism." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 614 (E.D. Ky. 2010) (citations omitted). Here, the same plaintiff—Kamron Karington—is suing the same Defendants—Matt Plapp and DMS—in the Nevada Action. (Doc. # 19-4). The

2 Plaintiff further contends that this intentional partitioning by the parties distinguishes this case from those cited by Defendants. (*Id.* at 9-10 (citing *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390 (6th Cir. 2019), and *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. 2017))).

fact that Joseph Gratz and Empower Marketing Software, LLC are also plaintiffs in the Nevada Action does not preclude parallelism.

Similarity of parties, however, does not necessarily mean there is similarity of claims and issues. Although the two actions emerge from the same transaction, different facts are relevant to each. Here, it is important to recount *which* Transaction Documents are implicated in the respective actions. The Nevada Action involves claims for breach of the MIPA and Note, while the instant case concerns Defendants' alleged breach of the Employment Agreement and the Amended Operating Agreement. (Doc. # 19 at 9). These are distinct contracts, which impose separate duties. As Plaintiff observes, "Defendants could have defaulted on the Notes while continuing to employ and compensate Karington, just as they could have breached the Employment Agreement or [Amended] Operating Agreement while remaining current on their obligations under the Notes." (*Id.*). Thus, Plaintiff's claims in this case will rely on different facts than his claims in the Nevada Action.

Plaintiff cites the Sixth Circuit's decision in *Baskin v. Bath Twp. Bd. of Zoning Appeals* in support of this point. 15 F.3d 569, 572 (6th Cir. 1994). In *Baskin*, a group of disgruntled homeowners sued in state court to prevent a zoning variance that Baskin had received for the construction of several amateur radio towers on his property. *Id.* at 570. As grounds for their suit, the homeowners alleged that the variance permitted the towers to exceed local height regulations. *Id.* Although Baskin was not initially named in the state court action, he moved to intervene to defend the variance. *Id.* On the same day, Baskin brought his own suit in federal court, alleging that the variance he received imposed unfairly restrictive conditions on his project and violated his federal constitutional

rights. *Id*. Although the federal district court *sua sponte* dismissed Baskin's federal action pursuant to *Colorado River*, the Sixth Circuit reversed, finding that the two actions were not parallel. *Id.* at 572. In the Sixth Circuit's view, the two actions lacked the "required identity and parties of issues," despite their common factual background. *Id.* Although the zoning board's decision to grant a variance was a single event, the *Baskin* court noted that the federal and state actions "each contest[ed] a different aspect of the variance . . . and they [sought] different relief." *Id.* As a result, the actions were not parallel. So too here.

The claims brought by the Nevada Action plaintiffs "seek different relief" than those brought by Plaintiff in federal court. *Id.* In state court, the plaintiffs seek damages and equitable relief for damages they incurred in relation to the MIPA and the Note. (Doc. # 19 at 8). In this action, on the other hand, Plaintiff seeks relief in relation to the Employment Agreement and the Amended Operating Agreement. (*See generally* Doc. # 1). Thus, the Nevada and federal actions will focus on different—though related—facts regarding separate agreements and distinct legal theories. That these contracts were all part of one transaction does nothing to change this fact. *See Kingland Sys. Corp. v. Colonial Direct Financial Group, Inc.*, 188 F. Supp. 2d 1102, 1113 (N.D. Iowa 2002) (holding that parallelism did not exist "even though the parties in the two actions are not just 'substantially similar,' but identical, and even though, read broadly, the claims in the two actions arise from the same basic facts of the parties' business relationship.").

Whether the Nevada court concludes that Defendants breached their duties under the MIPA or the Note will shed no light on whether Defendants breached their duties under the Employment Agreement or Amended Operating Agreement—the contracts at

issue here. Further, whether Defendants engaged in deceptive and misleading behavior that induced Plaintiff to consummate the Note or the MIPA will not necessarily resolve the question of whether Defendants also unlawfully induced Plaintiff to enter the Employment Agreement or the Amended Operating Agreement. "In other words, just because this case and the state case grow out of the same general event does not mean that they are parallel." *Total Renal Care*, 743 F. Supp. 2d at 615.

But, Defendants protest, the Nevada court is "adjudicating the validity of the Transaction Documents themselves[.]" (Doc. # 20-1 at 5). Although the Nevada Action—post-amendment—does not implicate the two contracts at issue here, Defendants have counterclaimed for recission of *all* Transaction Documents, including the Employment Agreement and the Amended Operating Agreement. And, Defendants argue, the Nevada court's "resolution of that issue will necessarily determine or, at a minimum, materially affect—and potentially recast—the claims asserted here." (*Id.*). However, a similar concern was present in *Baskin*. There, two actions concerned the propriety of the same variance award. *Baskin*, 15 F.3d at 572. The state court was tasked with deciding whether certain aspects of the variance were excessive, while the federal court decided whether the other conditions of the variance were too restrictive. *Id.* A conclusion by the state court that the variance was excessive would "potentially recast" the federal court's consideration of whether the same variance was too restrictive. Nevertheless, the Sixth Circuit deemed the actions parallel, "[d]espite the very different theories advanced" in each. *Id.*

Additionally, the Nevada court's resolution of the Nevada Action—including Defendants' counterclaim—will not "necessarily conclude the subject matter addressed

in the federal case." *Nationwide Mut. Ins. Co. v. Knott Cnty. Water and Sewer Dist.*, 600 F. Supp. 3d 710, 712-13 (E.D. Ky. 2022) (citing *Moses H. Cone*, 460 U.S. at 28). The Supreme Court has cautioned that a stay is only appropriate where "the parallel state-court litigation *will be* an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28 (emphasis added). Thus, "cases are not considered parallel if there is an issue that would not be resolved by the state court upon completion of the state court action." *Kopacz v. Hopkinsville Surface and Storm Water Util.,* 714 F. Supp. 2d 682, 686 (W.D. Ky. 2010) (citing *E. On U.S. Serv., Inc. v. QSC Painting, Inc.,* No. 08-54-JBC, 2008 WL 3982499 (E.D. Ky. Aug. 26, 2008); *Nationwide Mut. Ins. Co.*, 600 F. Supp. 3d at 712-13; *Wright v. Linebarger Googan Blair & Sampson, LLP,* 782 F. Supp. 2d 593, 603–04 (W.D. Tenn. 2011)).

For the reasons discussed above, the Nevada Action will not resolve the claims Plaintiff brings before this Court in relation to the Employment Agreement and the Amended Operating Agreement. If Defendants do not succeed on their counterclaim for rescission, the Nevada Action will have absolutely no bearing on Plaintiff's claims here. And, by Defendants' own admission, even if they *succeed* on their counterclaim, Plaintiff's claims in this action may proceed, albeit in a different light. (Doc. # 20-1 at 5, 13-14 ("To be sure, certain statutory claims—such as wage-related claims under federal or state law—may exist independent of the enforceability of the Transaction Documents.")). However, "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion" to stay the case. *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006) (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592

(7th Cir. 2005)). Because the Nevada Action is unlikely to completely resolve the issues between the parties, a stay is unwarranted.

**B. *Colorado River* Factors**

Although Defendants' Motion fails for lack of parallelism, the *Colorado River* factors also counsel in favor of retaining jurisdiction. *Total Renal Care*, 743 F. Supp. 2d at 613 ("If the actions are not parallel, the inquiry is at an end, and abstention is not appropriate.").

Even when a parallel state action exists, courts must first consider eight factors before abstaining. Those factors are:

> (1) Whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (cleaned up)). The factors are not a "mechanical checklist." *Total Renal Care*, 743 F. Supp. 2d at 615 (quoting *Romine*, 160 F.3d at 341). And "the balancing always starts with a heavy thumb on the scales in favor of exercising jurisdiction." *Id.* (citing *Moses H. Cone*, 460 U.S. at 16).

Defendants acknowledge that the state court has not assumed jurisdiction over any res or property in this case. (*See* Doc. # 20-1 at 5-6). As a result, they argue that this factor is neutral. (*Id.*). However, the Sixth Circuit has unambiguously held that where no property is at issue, this factor weighs *against* abstention. *Romine*, 160 F.3d at 341 ("[B]ecause no property is at issue; this factor thus weighs against abstention."); *Preferred*

*Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017) (holding that "the first factor weighs against abstention, as the state court has assumed jurisdiction over no property in this case"). There is no dispute that the Nevada court has not assumed jurisdiction over any res or property. (*See* Doc. # 20-1 at 5; Doc. # 19 at 11). Accordingly, the first factor weighs against abstention.

The second factor asks "whether the federal forum is less convenient to the parties[.]" *Romine*, 160 F.3d at 340 (citing *Colorado River*, 424 U.S. at 818-19). Defendants argue that "[u]nder Sixth Circuit precedent, where no forum is demonstrably less convenient, this factor is neutral." (Doc. # 20-1 at 7-8 (citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001)). Once again, however, Defendants misread the caselaw. In *PaineWebber*, the Sixth Circuit concluded that "[b]ecause both the state courthouse and the federal courthouse in question [were] located in Cincinnati, Ohio, *the second factor counsels against federal abstention*." 276 F.3d at 207 (citing *Romine*, 160 F.3d at 341) (emphasis added). Defendants' position to the contrary would invert this factor by requiring a showing that the *state court* was "demonstrably less convenient" than the federal court. (Doc. # 20-1 at 8). Such framing disregards the strong presumption against abstention.

Properly construed, the second factor counsels against abstention in this case. As Plaintiff observes, the parties expressly consented to litigation in this Court by virtue of the forum selection clauses set forth in the Employment Agreement and the Amended Operating Agreement. (Doc. # 19 at 12). This indicates that the parties believed this Court to be a convenient forum. *See Almetals, Inc. v. Marwood Metal Fabrication, Ltd.*, No. 19-13254, 2020 WL 3263824, at *4 (E.D. Mich. June 17, 2020) ("In the context of the

*Colorado River* analysis, a party subject to a valid forum selection clause waives arguments that the forum is inconvenient." (quoting *LMP B&B Holdings, LLC v. Hannan*, No. CV 19-385, 2019 WL 4447627, at *6 (E.D. Pa. Sept. 16, 2019))). Furthermore, both Defendants are Kentucky residents. Consequently, they cannot seriously suggest that this Court would provide a *less convenient* forum than the Nevada court.

The third factor—the avoidance of piecemeal litigation—is the "paramount" consideration. *Moses H. Cone*, 460 U.S. at 19. Defendants argue that this factor weighs in favor of abstention because it presents "the precise situation *Colorado River* abstention is designed to prevent: two courts addressing different aspects of the same transaction at the same time, with overlapping factual and legal questions and the potential for conflicting rulings." (Doc. # 20-1 at 10). Certainly, that potential is present here. "But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816 (citations omitted). The risk of potentially incongruous litigation is part and parcel of our system of dual sovereignty. *Nationwide Mut. Ins. Co.*, 600 F. Supp. 3d at 714; *Total Renal Care*, 743 F. Supp. 2d at 616. This risk, however, "is not really the danger that *Colorado River* was concerned about." *Total Renal*, 743 F. Supp. 2d at 616. In *Colorado River*, "state and federal litigation concerned rights to the *same water*. If the state court held that the plaintiffs were entitled to the water, but the federal court held that the defendants were entitled to the same water, there would be a serious problem." *Id.* Although this case carries the potential for "potentially inconsistent adjudication," in some respects, it does not present the same "intractable situation" as *Colorado River. Id.* As a result, this is not one of the exceptional cases in which abstention is warranted.

The fourth and seventh factors are best considered jointly. *See Woody's Restaurant, LLC*, 980 F. Supp. 2d at 788 (citing *Moses H. Cone*, 460 U.S. at 21). The fourth factor concerns the order in which the two fora obtained jurisdiction, while the seventh examines the relative progress of the two actions. *Moses H. Cone*, 460 U.S. at 21-22. The Nevada Action was filed on September 22, 2025. (Doc. # 20-1 at 11). Plaintiff did not file his Complaint in this Court until February 27, 2026—roughly five months later. (Doc. # 1). The Nevada Action has progressed beyond the pleading stage and initial case management proceedings. (Doc. # 20-1 at 17). This action, meanwhile, remains in relative infancy. Thus, the Court finds that the fourth and seventh factors weigh in favor of abstention.

The fifth and sixth factors weigh against abstention. These factors ask whether state or federal law will govern the claims and whether the state court action is an adequate vehicle to protect the federal plaintiff's rights. *Romine*, 160 F.3d at 341 (citation omitted). Plaintiff's Complaint brings causes of action governed by Kentucky and federal law. (Doc. # 19 at 15-16). Both the Amended Operating Agreement and the Employment Agreement contain choice-of-law provisions stipulating that Kentucky law will control. (Doc. # 1-2 at 4 and Doc. # 19-3 at 24). Because Kentucky law—rather than Nevada—will govern Plaintiff's claims, this Court is best placed to adjudicate those claims. *See S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021) (holding that where Michigan law applied, a federal court in the Western District of Michigan was better situated than a court in the Dominican Republic to hear those claims). Moreover, the presence of claims stemming from Defendants' purported breach of the Amended Operating Agreement and Employment Agreement casts further doubt on the Nevada

Action's ability to protect Plaintiff's rights. As Defendants acknowledge, the Nevada Action will not address or resolve Plaintiff's "employment-related claims[.]" (Doc. # 20-1 at 14). And the forum selection clauses contained in the Employment Agreement and Amended Operating Agreement require that any claims related to those contracts be brought in a federal or state court in the Commonwealth of Kentucky. (*See* Doc. # 1-2 at 4-5 and Doc. # 19-3 at 24). Indeed, in granting the Nevada Action plaintiffs leave to amend their complaint and remove their claim under the Employment Agreement, the Nevada court expressed doubt that it "would be able to retain jurisdiction over an agreement that has a clear and unambiguous forum selection clause outside of its jurisdiction." (Doc. # 19-5 at 3). Because the Amended Operating Agreement contains a similarly preclusive forum selection clause, questions remain over the Nevada court's ability to adjudicate Plaintiff's claims under those contracts. Thus, the sixth factor weighs against abstention.

Finally, the eighth factor asks whether concurrent jurisdiction exists in the state and federal forum. Plaintiff seems to argue that concurrent jurisdiction does not exist because of the forum selection clauses contained in the Employment Agreement and Amended Operating Agreement. (Doc. # 19 at 17-18). At least with respect to Plaintiff's claims under the FLSA, forum selection clauses do not—and cannot—divest a state court of its concurrent jurisdiction. *See Tafflin v. Levitt*, 493 U.S. 455, 470 (1990) ("It therefore takes an affirmative act of power under the Supremacy Clause to oust the States of Jurisdiction[.]") (Scalia, J., concurring). States have concurrent jurisdiction over federal causes of action by default because "[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are."

*Claflin v. Houseman*, 93 U.S. 130, 136 (1876). The parties agree that claims under the FLSA may be adjudicated in state or federal court. (Doc. # 20-1 at 17-18; Doc. # 19 at 17); *see also Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697-99 (2003). A forum selection clause might bind the parties to a certain venue, but it cannot divest a state court of subject matter jurisdiction. There is concurrent jurisdiction, and the eighth factor weighs in favor of abstention.

In the final analysis, three factors, four, seven, and eight, weigh in favor of abstention while five, one, two, three, five, and six, cut the opposite direction. Thus, even if the Nevada Action was parallel to this matter, this is not one of those "extraordinary and narrow circumstances" in which a stay is warranted. *Colorado River*, 424 U.S. at 817-18.

## III. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion to Abstain, then Stay (Doc. # 10) is **DENIED**.

This 2nd day of September, 2026.

**Signed By:**
***David L. Bunning***
**Chief United States District Judge**